Case No. 24-1298 World Shipping Council Petitioner v. Federal Maritime Commission and United States of America Mr. McGovern for the Petitioner Mr. Summers for the Respondents Good morning counsel Mr. McGovern please proceed when you're ready Good morning your honor may it please the court Robert McGovern for Petitioner World Shipping Council this case addresses whether the Federal Maritime Commission adopted a rule that exceeds its statutory authority under the U.S. Shipping Act and is arbitrary and capricious under the APA to address COVID-19 supply chain disruptions including when shippers were competing for very limited vessel space during a time of unprecedented demand Congress amended the Shipping Act and directed the FMC to adopt a rule that defines the term unreasonable in the context of negotiating and providing vessel space that rule that adopted violates the Shipping Act and the APA in three key respects first the rule impermissibly allows the FMC to regulate ocean carrier prices notwithstanding Congress's express repeal of that rate making authority over 40 years ago second the rule directly interferes with the business of ocean carriers by requiring them to create file and then have their actions judged against prospective export policies and third the rule consciously jettisons legitimate business reasons as an explicit factor with no meaningful or logical explanation reversing decade-long precedent that the FMC itself relied on in its own proposed rule as to the rate making factor the rule allows the Commission to consider quote the quoting of rates that are so above market rates that they cannot be considered a real offer or an attempt at engaging in good faith negotiations but Congress explicitly repealed the Commission's statutory rate making authority in 1984 and it did so for a very specific reason quoting legislative history Congress determined quote excessive government involvement as unnecessarily interfered in many aspects of shipping activity where commercial parties more appropriately should govern their own conduct this is on pages seven and eight of our opening brief and importantly this statutory regime remains even after OSER 22 was passed now I expect that my colleague will argue that the rule only allows the Commission to evaluate and not to set rates but whatever terminology the FMC wants to use consider benchmark evaluate there's no scenario under which an agency that does not have statutory rate making authority can then turn around and tell regulated entities that their rates are too high that rate making factor in the rule also fails under the APA because the Commission never explained what it means for a rate to be too high it never explained what methodology it would determine what a reasonable market rate might be in comparison and it never explained what amount of deviation might between the two would in the Commission's view be considered unreasonable section 4104 of the Shipping Act also does not allow the Commission to require carriers to create and file prospective export policies and as always on questions of statutory about the business decisions argument of course as you know FMC indicated in the rule quote information on business decisions relevant to establishing reasonable refusal to deal would still be relevant and I would interpret the APA's arbitrary and capricious standard to require the agency to consider relevant factors when it takes agency action so putting kind of those two things together why should I be worried that the FMC will not consider business decisions as a factor when the business decisions thank you your honor so we have to start from where the FMC started in the proposed rule and they had they had business factors explicitly in there I mean what why because they said we have business factors in here because it is a recognition of our long-standing policy that this is a this is a factor that we consider when addressing reasonable bits under the statute the FMC is not starting from a blank slate here 41 104 a3 and a10 were already in the statute when OSER 22 passed they don't have to persuade us that the final rule is better than the proposed rule they just have to persuade us that the final rule is reasonable and reasonably and I think your honor to answer your question why should you be concerned the FMC has made a choice here the FMC has said that these factors were in the proposed rule but then we remove them and we remove them because we had a concern that they had the potential to overwhelm other factors that's JA 51 that's not an explanation of departing from your past precedent what that is is saying that a factor is apparently so significant that has the potential to overwhelm factors but not significant enough to be listed alongside those in the rule I'm gonna ask them about that I do think it's a little wild that that was best they could do in explaining what they did but I'm asking you in part because I think it goes a little bit to the merits but a little bit to if if I have every reason to believe that in spite of their we're not gonna include business decisions in the rule because they're too important to include some version of that regardless of that if I have every reason to believe that information on business decisions that are relevant will be considered then I'm not sure how party that says we want business decisions that are relevant to be considered is injured your honor I would answer the question your question this way one the FMC has already signaled in both its rulemaking and it's brief that how it wants fact-finders to adjudicate these cases it's making a conscious policy decision now to deprioritize these they've listed some factors they've taken business factors and said we may consider them down the road there's also a slip of the tongue that the FMC makes in both the rule and it's brief when it says that it removed business factors preferring something that they must consider to being something that they may consider under the regulatory catch-all that you're referring to our understanding is none of these rules are all of them are a suite of non exclusive even if they said we're changing it to May if the APA requires them to consider business decisions when the business decisions are relevant it seems like regardless of whether they said may or must the APA imposes a must and judge Walker I would say the FMC has made promises like this before in a case before this court evergreen versus the FMC interpret involving an FMC interpretive rule the FMC said in that rule will consider one factor and we may that the FMC had to evaluate that they considered only the one and ignored all the others so what and then what did you do we challenged it in court and what we're hoping to do now is we did your honor so why why not why isn't that from a standing perspective injury that's either now or imminent why wouldn't we require you to do what worked for you last time because the what the the lack of explanation on the business factors we don't consider your honor our argument World Shipping Council's argument is that just saying that we may consider it as part of a regulatory catch-all is not sufficient under the APA to explain why the FMC is departing from past precedent we both don't believe that we shouldn't have to wait until some future adjudication we believe that violation under the APA exists now and that's why we're challenging it now you're in your reply brief you deal with the state of California case Commission and your response is that to the relevant authority in 1984 and continuing on that removal of this authority as well as Congress's removal of the Commission's general rate-making authority suggests that California would be decided differently under the current version of shipping so looking at the then prevalent then prevailing and now incumbent versions I see that under Cal and when California was decided 1944 I think every such carrier shall establish observe and enforce just and reasonable regulations and practices whenever the board finds that such regulation or practice is unjust or unreasonable it may determine prescribe an order enforced adjusted reasonable regulation practice which in 1944 was prescribing rate change current version a common carrier may not fail to establish same as observe and enforce just and reasonable regulations practices etc Commission may prescribe regulations to carry out its duties and powers what is lacking in the current version that was present before and that could explain that could put California to one side so the state of California you're right your honor a 1944 Supreme Court case cited by the Commission to support its inclusion of the rate-making factor that case was decided under the 1916 act I just read the provisions from so Dean and from the current so the provision under the 1916 act your honor the difference is that the FMC in that case pardon me the rate-making authority in that case they didn't have authority over the carrier in question well or the port in question because it was a state answer right so they didn't have regular they didn't have rate-making authority over that entity I think it was a city of Oakland but nonetheless because there was an unjust unreasonable practice so found they were able to prescribe the right as that as the cure and your right to determine prescribe in order enforced just and reasonable practice but they were utilizing their authority in the 1916 act in that case their rate-making authority that they don't have now and that is why we believe that the removal of that authority and I think they're using their rate-making authority when they didn't have rate-making jurisdiction over that entity well your honor the courts reasoning in the state of California case was that the Commission could require certain compensatory charges due to Congress's and this is quoting from the case Congress's unlimited grant of the power to stop those practices so that the practices in question in the California case related to compensatory charges and the unlimited patent grant of power that the Supreme Court referred to was the authority that the Commission had prior to 1984 relating to its power to regulate charges the withholding of rate make this is from the case the withholding of rate-making power for services other than water carriage does not qualify the unlimited grants of the Commission power to stop effectively all unjust and unreasonable practices in regard to handling the freight finding a wrong which it is duty bound to remedy the Commission may within the general framework of the act fashion the tools for so doing seems to be pretty clear that they're just saying they don't have rate-making authority they've got an unjust practice they have to deal with it and they can do it by prescribing a rate your honor I would answer your question this way which is only then the situation that we have before us is very different than the state of California case the situation that we have before us is not just determining prescribing and ordering as it relates to the rate-making factor what the FMC has done here is that we're going to consider whether or not a rate is so high above market rates to be considered unreasonable we say there are two problems with that one from a statutory perspective how does this play out so somebody challenges an ocean carrier rate and it goes to the Commission and the Commission says that's too high it's too high above a market rate one we don't know what market rate they're using to compare it to but the carriers only then remedy on this one is to reduce its rate because the Commission just told him that it was too high and that how does that play out that plays out by well what if the what if the the shipper then continues to say no the carriers rate is still too high and goes back to the Commission says still too high the Commission then under this rule can say your charge is still unreasonable because your rate is too high that process would go until ultimately the carrier charges something that's consistent with whatever the whatever rate the Commission determines to be reasonable if that's not rate setting and it's hard to see what is well the way it plays out I take that scenario it it's an accurate portrayal of what to expect I'm just not sure why it's different in the end because it is in the end prescribing the rate and your honor it is interesting that one the FMC has not pointed to a single statutory provision that allows for this type of rate because it can't here as you said the in California the result was to require was it compensate a compensatory rate charge to impose a charge my problem was their charges were too low that's right the demurrage charges so they were distorting the market for attracting traffic and so that says they said the only way to correct the preferential and reasonable results of non-compensatory charges was to require compensatory charges to prescribe a rate in other words and and you're saying well effectively that's what they're doing here by indirection and I think if you're correct although it's still within what happened there that's right your honor and I would say it's it's interesting that the only case that the FMC sites to support its rate making factor is a 1944 case when the FMC had rate making authority they don't have any other cases decided and this is this is right and what courts have held is that agencies cannot do directly with authority over Oakland that's that's your problem that's good question coming at it a little differently the same set of issues though the statute prohibits unreasonably refusing to deal or negotiate so if the rate that's proposed is so stratospheric that it's is that something that the Commission can take into account it's your honor's question is a situation that the FMC discuss in their brief they use the words well what if a rate is so absurdly high that it can't possibly be considered a refusal in actual the answer there's just one we don't know what the FMC means by absurdly high nobody does you disagree there's no such but nevertheless that's right if Congress wanted the FMC to have the authority to regulate rates it would have expressly given that I'm trying to get my answer so suppose they say a billion dollars do you think that's something that the Commission just can't consider not as a factor for reasonable HR that's right that's a rate making factor and I I would add to to that that there's a read Congress has made this decision and the reason is that's ignoring market realities to say that there there's nothing that can be done if an ocean so how about so how about this they say I'm not gonna negotiate with you that's clearly it is and that's expressed in the FMC okay and then they say oh darn it I have to negotiate okay billion dollars so your answer is the FMC doesn't have the authority to use rate making as a factor of reasonableness but if the carrier offers a million dollars there's only two ways that a carrier can make that offer either through a service contractor through a tariff if it makes it through a service contract the shipper is just going to turn around and go in a very competitive industry to any other carrier that's going to give them a much different rate obviously if that million billion dollars is in the tariff well an ocean carrier has now just effectively turned away its entire customer base it's precisely those market realities that cause Congress to say that market the market polices itself and there isn't a role for the FMC in the space so your honor the answer to your question is no that's not a factor that the Commission can consider as reasonableness even under the hypothetical so they consider refusal to deal in that hypothetical situation based on something other than the rate that's proposed that's right the way you would look at that yes and what would they look at if the only thing that's on the table is a rate of ability I understand your honor's question and I guess first of all all of this is done on a case-by-case basis and the commission is the case if that's if that's the only case then then WSC's position is that's that's a that is a rate factor that the Commission simply doesn't have the authority in the Shipping Act to that's not a refusal to deal then not under the not under the Commission's authority under the act does it have the exact same effect as an express refusal to deal so in practice I understand the question but it comes down to whether or not the FMC has this authority to consider it as a reasonableness factor or not it comes back to the it comes back to the act itself and if if you know the court accepts WSC's argument but the FMC does not have the authority to consider rates as a factor in a reasonableness analysis because Congress not only did not give them that authority in the Shipping Act but it took that authority away then that's not something the FMC can use as a as a factor under reasonableness company a says I won't deal company B says I'll deal but the cost is a billion dollars there is no practical difference in the effect of those two companies choices correct correct practically that's true and under the market realities you've then got companies CD all the way down to you know M in which case there will be there are competitive options for these shippers and this is not like it would apply also in the situation a where the company says I won't deal it seems like your answer will be well it's no big deal because you can just go find company C through M the Commission's rule says that a categorical refusal to deal with no justification is considered unreasonable not something that WSC disputes just to just to play it out one more time so take judge Walker's hypo and just keep it with company a the company's a refuses to deal you would say okay they can be justly held to account refusing to deal and then company a says oh okay I guess I can't refuse to deal so billion dollars and then you would say company a loses the first time but wins the second your honor that's right and and that's the Commission's point of saying what if somebody does an absurdly market rate and I would submit that Congress has already made that determination that in the first instance that's something the FMC can find unreasonable under its authorities in the act in the second it isn't I think I know your answer to the next question I want to totally prolong it but the chief judge's question was about a billion dollars your answer be the same as it was a trillion dollars yes sir and your answer be the same if it was a trillion dollars in pennies yes sir thank you guys we'll give you a little time for rebuttal thank you Summers good morning and may it please the court Harry Summers for the Federal Maritime Commission this is not an example of rate making this is very this is not a freestanding complaint to the agency saying hey this rate is too high as the questions that whether one of your honors were asking show this is in the context of an administrative adjudication about whether there was an unlawful refusal to deal that's a retroactive determination about whether one particular back pattern you know had an example of a rate that was so high it did not indicate a good faith negotiating posture in the context and it only applies in the context before a deal has been made because it's one question I had about that is I thought the way the Commission framed this is that a rate might be unreasonable not that a really high rate would be indicative of an unreasonable refusal to deal it's that I can you let's understand it for the reasons that were elucidated earlier but what is the Commission's view that the rate actually itself can be unreasonable or that a high rate can be indicative of an unreasonable refusal to deal this only arises in the context of enforcing the refusal to deal statute Congress asked us to further define that statute this is not a freestanding requirement about rates this is one permissive factor that can be considered along with other factors as has been discussed in evaluating in an administrative adjudication resulting from a private party complaint or the Commission's enforcement division beginning an investigation into whether there was an unreasonable refusal to deal one factor the agency may consider is whether the rate quoted was so high that it doesn't reflect good faith negotiation and I think in the example the Commission can't say the rate that you proposed I have authority to determine whether you're unreasonably refusing to deal the rate that you propose is unreasonable that you think can't be done it would have to be the rate you proposed you know potentially couple with some other things but let's just leave other things out the rate that you proposed indicates an unreasonable refusal to do I think that the Commission is charged under the APA as Judge Walker was was saying with a full evaluation and consistent with Judge Ginsburg's decision in Evergreen a full evaluation of all the factors in the statute and in its regulation implementing the statute in this case there are a number of factors and examples the Commission should consider some may be more relevant in a particular case than others so in the case where there was a rate that was widely at variance with with the market that would certainly be likely be an important factor but not necessarily the only factor so it's unlikely the agency would say case closed we're not going to consider any of the relevant factors it would consider others that were relevant consistent with the APA so that's if that answers your question the council tells us rates in this area are volatile and change from day to day and there can be a great deal of dispersion among them so what is the market rate I think the market rate would be determined much as it may be in litigation generally the parties would no doubt argue about what the market rate for the particular routes the shipping routes that were at issue in this retroactive determination what was the market rate at that time and there's a number of resources that parties can consult to determine shipping rates there's online resources and platforms that regularly publish detailed analyses of what what the market rates are for particular routes the Commission itself has experts who evaluate these rates economists and so I think there's a number of resources just just as in any litigation parties to get pretty deeply into the weeds in terms of the rate examination is it fair to say that unreasonably refused to deal and negotiate is eventually equivalent to refusal to bargain I think that's that's argon being pretty much anonymous I think that's basically right your honor I think so there are probably thousands of cases under the Labor Act in which the Labor Board has brought an 8a5 charge or an 8b5 charge talking about claiming unreasonable pardon me failure to bargain in good faith and I haven't read them all so I can't tell you but I have read hundreds of them because I've taught the subject for some years and I've been on the court for 38 years and I've never seen a bargaining good-faith charge that was based on refuse an employer offering too low a number for some benefit or wage or union demanding to something too far way above the market it's always about the process bargaining a good faith I mean so for instance a General Electric under bulwarism could not say we will make a firm fair final off from fair first and final off that's not bargaining okay doesn't matter what the offer is so I'm not sure why you have to get into rates at all in order to determine whether someone is reasonably refusing to negotiate your honor I think it relates to the potential for that term to provide a method of circumvention of the statute I think for the reasons that were discussed earlier it would be very easy to effectively refuse to deal perhaps because you felt you you could make much more money doing something else this is something we saw that Congress saw during the pandemic where a lot of u.s. exports were left on the docks effectively because the carriers felt they could make a lot more money going back to overseas and bringing more products to the United States from elsewhere Congress wanted the Commission to try to strengthen this this rule to avoid that well couldn't one of them negotiate in good faith and still come to the conclusion that they're not going to pick up this traffic they've got better things to do it's possible your honor but it would be a very easy way to achieve the same result as simply refusing to negotiate at all if they could quote a rate that was absurdly high by any measure so I think that that's what the Commission was trying right to achieve and it's important to remember that it's it's just one factor so the Commission can consider the other factors listed in the rule in an appropriate case so it is case-specific determination not not I think I think the example shows that labor area that it's possible to enforce good faith bargaining or not on to to prevent reasonable refusals department without getting into rates at all in this case I think the Commission and it is a little bit dicey since great making I understand that concern but I think this is this is really so far removed from actually setting rates and in fact other parts of the statute for example sections 41 104 a 4 and a 5 that Congress created do require that the Commission evaluate again in the context of a retroactive determination about whether a practice was an unreasonably discriminatory practice or unfairly discriminatory rates and charges are specifically provided for as something that the agency should look to look at so I think the Congress has even though as has been said mission can no longer actually set rates it can evaluate rates in the context of adjudicative determinations to enforce other parts of the act that address things like a remedy if there's a complaint a shippers complaint and the carrier is found to have engaged failed to conduct itself reason self-reason your honor in the context of a private party complaint the remedy is typically reparations which are in the nature of damages so it's operations a sum of money yes a sum of money and how would that money be measured if not against some hypothetical rate I think it would on the facts of the case but yes that that is a likely measure of damages determine a benchmark rate from which to compensate reparations in the context of a particular case about past conduct yes I think there would have to be some measure about of how the claimant was injured and so to extent that they could have so if you have a statute that says the statutory provision remedies reparations yes yes so if that's the provision and I don't see how you can determine that without engaging in what you're talking about radio value yes that's correct but rate evaluation is very different from setting the rates that's not a damage calculating damages is very close to setting well it's evaluating one past rate on one particular fact scenario not not setting the rates the market sets the rates this is just a comparison point to be used in administrative judicature case where there's an outright refusal to deal so taking archetypal violation where there's just flat refusal to deal what would would there be dam reparations or damages in that situation and then the way you calculated is what a reasonable rate would have been had there not been what everybody agrees the violation which is just an outright refusal to deal I think that could be the measure of damages I think it would depend on a particular situation and what what the claimant had to do or in order to move its products and perhaps in order to move its agricultural exports or in the case that it could not move them perhaps there would be damages related to being unable to move them so or perhaps unable to move them on time so those those damages would relate to the particular facts in the case but yes it could it could involve a determination of what was a reasonable market rate at that time and it could be used by measuring data on some of the resources that I mentioned earlier so that data is out there so the provision requiring allowing for reparations seems to me brings the case even closer into the California pressing yes I think I think that's probably right I'll see how it can be avoided okay the rule says it talks about quoting rates that are so far above current market rates and some of the questions we were asking your opposing counsel were there were unfair way above current market rates questions and a million percent higher than current market rates what what what do you mean by so far above current market rates what's the floor on so far above I think I don't think there is a precise definition your honor I think it would be very context-dependent like so much that's in the statute that is phrased in terms like unreasonable unfair unjust these are the kind of terms that Loper bright mentioned that agencies may receive from Congress and are given a certain amount of discretion to define here I think in a particular case I believe the regulatory language is so so far above market rates that they couldn't they don't indicate a good-faith negotiation or effort to negotiate make a deal I think if in a particular case the agency were to define that in a way that was unreasonable inconsistent with the APA there'd be reason to object but I don't think it's required to define in advance exactly what that would be certainly we couldn't assign a number because there's so many potential variables with different shipping routes and over time and different economic conditions and if you did assign a number that would look a heck of a lot like race it would even though still it's only in the context of a larger evaluation of refusal to deal and one of you know many potential factors but if I understand is we don't want to rate set so we're not going to set number instead we're going to leave you in the dark about what the number is I don't think it would be practical or perhaps even defensible to try to define a precise number because there are so many potentially relevant factors in a retroactive analysis of that type so it would be very context dependent and again it's just one of many potential factors there's any shipper I think a complaint prevailed on to remedy since the event just the amendment of the statute your honor I'm not aware of one I know there are some pending cases where the rule has been broadly cited but I'm not I'm not aware that that the cases before amendment of the statute in which reparations were awarded I believe so your honor I don't have an example in front of me yes we'll find it I guess my I guess my concern is it has to be that sometimes a rate can be quoted that's above market otherwise market rates would never increase right yes and so if they're allowed to quote rates above market rates they're not allowed to quote rates that are too far above market rate you don't tell them what too far is seems like quite the bind there your honor I think the language in the regulation is very strong in the sense that it it's not superlative but it's it's a it's a very strong expression that the rate is very far removed from the market rates so far above that it does not indicate a good faith negotiation I think that's that's not like a small you know inflation level increase that's that's something more and I think if the agency were to act unreasonably in evaluating that in a particular case there would be certainly grounds to object and an opportunity on the part of the responding carrier to object to that in there but in the abstract and just based on the regulation by itself in the abstract I think it's a reasonable expression of an important method to avoid circumvention of the statute if if you prevail here and then if at a certain point petition is filed saying you know we quoted a rate and it really wasn't so far above current market rates but you know it was used against us I'm on the panel I'm going to quote what you just said and decided the case I'm sure you think it's fair fair enough I suppose you could also have a concern the Commission's part that if you tried to identify some kind of parameter on what is so far above that it would pose an issue that it could be that there's actually a good explanation for why something that that's far above actually does shouldn't pose an issue and I assume the Commission's open to being persuaded on that and one reason why you might be reluctant the Commission might be reluctant to try to identify a number or a range could be that that number of range could turn out actually not to be prohibitive and in fact it turns out that there's you can be within the realm of good faith negotiation and still propose something that might at first appear to be outsized because of some contextual considerations that you said are unpredictable at the moment yes your honor I think I think that's right I think in many cases the kind of scenario you suggest would actually cause the market to change and so such a rate that was for those reasons would also affect the rates being charged elsewhere other carriers are quoting but if for some reason that wasn't the case there are the other permissive factors in the rule to be considered and it may be that those factors would outweigh this one in the analysis and in fact there is the catch-all provision where the agency will consider any other relevant factors or elements that may bear on on that decision so the carrier could certainly citing citing those provisions make that argument and the Commission I believe would consider that carefully so can I ask you about the business decisions regulation will business decisions be a less important part of the analysis than they were before this challenge regulation was promulgated your honor I understand the question I don't think that the Commission indicated that they would be less important I think that it elected after consideration starting in the NPRM and through the SNPRM and in the final rule not to include that as an explicit factor in its new rule there had never been a rule like this before so it wasn't like it was changing some previous rule it didn't include that it did point to the apparent potential for the factor to be given more weight than some of the commenters felt was appropriate it elected not to specifically put it in the regulation however it made very very clear in the preamble and the other rulemaking documents that that was a factor that was still potentially relevant the agency agency would consider going forward it made mention of the past adjudications in which that had been a factor which which my remain relevant the history of this is that it was a statute that was explained in adjudications over the years and all that material remains relevant here the rule didn't prohibit consideration in fact those catch-all provisions that I just mentioned are what allows the business decisions to still be considered so so that all sounds pretty fine there were a couple lines in the brief though that seemed more aggressive one of them is you you say that the petitioners seem to be using business decisions as a kind of code for always seeking to charge the highest rate as the going to be plenty of requirements and they're going to be expensive and that's going to cut into profit margin but in terms of what carriers get the money they get for carrying I don't understand why they wouldn't always seek to charge the highest rate I think I think the import of language you're talking about isn't that they can't seek to make a profit it's just that that's not the only consideration in making the kind of determination should they not seek to charge the highest rate well I don't think they I think if they sought a billion dollars then that would be a lawful refusal to deal so there are there are contexts where that which is a scenario that you've already uh covered but that I mean for your other regulation I mean I think that's I think what what your argument is in defense of that regulation is it's not really going to the rate it's it's using an exorbitantly high rate as a pretext for not dealing I mean I would think especially if these companies are publicly owned it would be perhaps even illegal in terms of their due to their shareholders to not seek to charge the highest rate it's really part of a larger analysis so it's it's not that they they can't or shouldn't seek to charge a high rate it's that if in in evaluating why they refuse to deal or why they refuse to provide cargo space a factor is what um their position shall we say as as to these business factors or business decisions it's not it's not an automatic basis to evade the statute um to cite that so that's not at all what positioners are asking for and that's not at all how the proposed rule would have read those rule would have just said business decisions are a factor that the commission considers and and they are still a factor so I feel like it's where congress hasn't required that we state any particular factor in the rules that they are still a factor I just want to pin that down it would it would not be okay for the commission to decline to consider a relevant business decision correct I yeah that's I I agree with that a relevant business decision yes yes because it would be arbitrary not to correct yes okay the objective is to determine whether they are negotiating in good faith the question about the rate is it could be whether that rate is indicative of a desire ever to reach agreement I believe that's right your honor yes or not just that rate but I think rates counter offers and so thank you counsel thank you Mr. McGovern we'll give you two minutes for rebuttal thank you your honor um I want to just stress a few things that have been discussed today first on what I will refer to as the billion dollar hypothetical I mentioned that there are two ways for a carrier to price their ocean transportation services one is through a service contract one is through a public tariff in the billion dollar hypothetical we're talking about ocean carrier a goes to a a customer a potential customer and says sure I'll move your cargo but only for a billion dollars we have to keep in mind too that that customer not just the competitive options that I've mentioned earlier today but that also has the ability to move cargo under the ocean carrier's tariff and the tariff will not say a billion dollars and the reason a tariff will not say a billion dollars is because if it does it's effectively turned off its entire customer base so there are options here and you know the reality is understanding the the court's practical questions about it but um there are there is a way for uh the way that the market works for a shipper to get the service it's asking well you're saying that no one ever pays more than the tariff uh usually the tariff is on the higher side and usually um through an individually negotiated confidential service contract you you um come to a lower rate that's usually the case you refer to um the instability of the rates and market rates being all over the place um well now you're telling us well below whatever the tariff rate should be uh is there a public source of information on that probably tariffs are publicly filed no no of the of the fluctuation and race so there was i think you indicated there's a commercial service or something that publishes the commission mentioned that there are a number of public services that are available things like um companies like alpha liner and peers injury there are people who who do um monitor the rates and uh are those all uh behind the paywall many are many are behind a paywall is there one that's not among the ones that i've just mentioned your honor they're all behind a paywall uh and and on that point um uh on the market rates you know the rule uh despite what we heard from my colleague today the rule doesn't say anything about what a market rate would be or where it would be developed it doesn't say anything about any of these public services or how the fmc would determine what what would be too high and it doesn't say anything about what deviation between an actual rate and a market rate would be we just don't know and at that point that gives carriers have no ability then to run their businesses and the fmc has a discretion to just decide for itself without any clarity in the rule um the fmc in its briefing here today also on the business decisions uh regulation you heard the government just say that the commission must consider relevant business decisions if that's how we read the regulation do you have standing if we we still do have associational standing your honor to challenge all all three of these but that's not what the regulation says but if how are you injured by a regulation that is read to require the commission to consider relevant business decisions if the regulation were to be read that they have they must they must consider business decisions that's in line with its past precedent and therefore um there's not an apa violation because the apa violation here is you wouldn't be injured uh not if that's how you read that is not your honor how we read the regulation and i'm not sure how the fmc reads it that way either if we read it the same way the fmc reads it and hold on in a published opinion you don't have standing it seems like you've basically gotten what you wanted uh on the business factors your honor you're right about that um uh on rate making if i can go back the commission in his brief and i hear today said look this is just one permissive factor we may or may not um consider that's really just downplaying its statutory overreach here and the fmc has made clear that these um rate factors are in their in their words critical and significant so the inverse is also true under the way that the fmc has structured the rule our reading of the rule um rates could be the only factor that the commission considers to find unreasonable and we would be and carriers would be left without any recourse there uh and lastly um your honors um uh the there's a theme throughout the the fmc's brief and also uh you know mentioned here today which is um you know congress gave the fmc broad authority because to adopt a rule to address serious supply chain concerns but congress's direction in this rule was clear it was narrow and it was simple define the term unreasonable here's what congress didn't do it did not uh reinsert the authority for the fmc to regulate ocean carrier prices it did not remove the core purposes of the shipping act that the fmc regulate with minimal government intervention and it did not give the fmc the ability to depart from past precedent without uh reasoned explanation so we asked that the court vacate the rules rate making export policy provisions that exceed the authority in the act and at a minimum ask that the court remand the case back to the fmc to explain how each of these disputed factors are relevant to and would be used in a reasonable analysis is there any commission supervision of the tariff rates tariff rates are publicly filed and so that in any way constructed so that other than the the requirement in the shipping act that they'd be publicly filed they don't have any authority to determine a tariff rate up or down and tariff and tariff rates would you say still commonly the ones charged or is most everything under service contracts uh your honor roughly speaking it's about my understanding is about 75 service contract 25 tariff but actually this gets to your honor this gets the point that the commission has made there are other comparable provisions in in the statute they're not comparable provisions actually you know they're very different um and the the ones that you know the the fmc has talked about 4502 41 104 those are all just requirement to file a service contract requirements that carriers adhere to their tariff those are general monitoring uh requirements but the fmc doesn't have any authority to tell a carrier what it can and should charge in a service contract or a tariff because congress never gave them that authority thank you thank you counsel thank you counsel take this case under submission
judges: Srinivasan; Walker; Ginsburg